UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

KEYSTONE MANUFACTURING, LLC,
d/b/a Keystone Solutions Group,

    Plaintiff,

v.                                                    Case No. 1:12-CV-1186

ACCURO MEDICAL PRODUCTS, LLC,        HON. GORDON J. QUIST
and LOVEJOY, INC.,

    Defendants.

_____/

## **OPINION**

Plaintiff, Keystone Manufacturing, LLC, filed a Complaint against Defendants, Accuro Medical Products, LLC, and Lovejoy, Inc., in Van Buren County Circuit Court alleging claims for breach of contract, account stated, and piercing the corporate veil. Defendant Lovejoy removed the case to this Court on the basis of diversity of citizenship, 28 U.S.C. § 1332(a), and moved to dismiss the Complaint for failure to state a claim. In response, Keystone filed an Amended Complaint, as permitted by Federal Rule of Civil Procedure 15(a)(1)(B).

Lovejoy has now filed a Motion to Dismiss Keystone's Amended Complaint for failure to state a claim.[1] For the following reasons, the Court will grant Lovejoy's motion and dismiss Keystone's claims against Lovejoy with prejudice.

---

[1] On December 17, 2012, after Keystone filed its Amended Complaint, the Court dismissed Lovejoy's Motion to Dismiss the Complaint as moot in light of Keystone's Amended Complaint. (Dkt. # 14.) A week prior, on December 10, 2012, Lovejoy filed a document titled "Response to Amended Complaint," which in effect was a motion to dismiss directed at the Amended Complaint, but neither filed nor docketed as such. Lovejoy subsequently remedied its procedural gaffe by filing a Motion for Leave to File *Instanter* Motion to Dismiss Amended Complaint (dkt. # 15), which this Court granted on March 8, 2013. (Dkt. # 28.)

## I. BACKGROUND[2]

Defendant Accuro was a medical device manufacturer and Keystone was one of its suppliers. Michael W. Hennessey was, and remains, the controlling member/shareholder of Accuro and Lovejoy, and the members of the Hennessey family, or their respective trusts, own a substantial majority or all of the membership interests or shares of stock in Accuro and Lovejoy. (Am. Compl. ¶ 23.) Keystone alleges that between approximately November 2011 and August 2012, Keystone sold various products to Defendants pursuant to written Purchase Orders. (*Id.* ¶ 7 & Ex. A.) Initially, the Purchase Orders required the products to be shipped to "Accuro Medical Products LLC c/o Lovejoy Inc. Receiving Dept" and the invoices to be sent to "Accuro Medical Products LLC c/o Lovejoy Inc. Accounts Payable Dept." Subsequent Purchase Orders specified shipping to "Accuro Medical Products LLC" and billing to "Accuro Medical Products LLC c/o Lovejoy Inc. Accounts Payable Dept." (*Id.* Ex. A.) Although Keystone delivered the products to Defendants, Defendants failed to pay Keystone in full and owe Keystone $234,818.46. (*Id.* ¶ 11.)[3] Accuro has ceased its business operations, as it "sold substantially all of its assets for approximately $150,000 pursuant to an assignment for the benefit of creditors ordered by Mr. Hennessey." (*Id.* ¶ 27.)

## II. MOTION STANDARD

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "a

---

[2]The facts pertaining to the motion are taken from Keystone's allegations in its Amended Complaint, as well as the exhibits attached to the Amended Complaint. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." (citation omitted)).

[3]Paragraphs 8–11 of the Second Amended Complaint are erroneously number paragraphs 1–3.

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986)). We must accept all of Plaintiffs' well-pleaded factual allegations as true and construe them in a light most favorable to Plaintiffs to determine whether the complaint establishes a valid basis for relief. *See Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). However, this rule does not apply to legal conclusions or unwarranted factual inferences. *Severe Records, LLC v. Rich*, 658 F.3d 571, 578 (6th Cir. 2011). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

**A.    Breach of Contract**

To establish its claim for breach of contract, Keystone must allege: (1) the existence of a contract; and (2) a breach of that contract by the defendant. *See Stoken v. J.E.T. Elecs. & Tech.,*

3

*Inc.*, 174 Mich. App. 457, 463, 436 N.W.2d 389, 392 (1998) (per curiam). In support of its breach of contract claim, Keystone alleges that the Purchase Orders attached as Exhibit A to its Amended Complaint are a contract for the sale of goods between Keystone and Defendants and that Lovejoy agreed to be bound by the terms of the contract based on the language "c/o Lovejoy Inc. Accounts Payable Dept" on the Purchase Orders.

Lovejoy argues that it is entitled to dismissal of the breach of contract claim because the documents attached to the Amended Complaint show that, to the extent Keystone had a contract, it was with Accuro and not Lovejoy. Lovejoy notes that the designation "c/o" simply means "care of" and provides no basis to conclude that Lovejoy is a party to the contract between Keystone and Accuro or that Lovejoy agreed to perform any contractual obligations to Keystone. Keystone responds that its allegations are sufficient under *Twombly* to put Lovejoy on notice of the basis of Keystone's claim and that Keystone's allegations that Lovejoy received some of the shipped goods for Accuro and agreed to remit payment to Keystone on behalf of Accuro are sufficient to create an inference that Lovejoy agreed to form a contract with Keystone.

Contrary to Keystone's assertions, the Amended Complaint fails to establish that Keystone had a contract with Lovejoy. Keystone's breach of contract claim against Lovejoy relies solely on the language directing that invoices be sent "c/o Lovejoy Inc. Accounts Payable Dept." The Purchase Orders themselves, however, show that Accuro, not Lovejoy, was the party with which Keystone contracted. Moreover, contrary to Keystone's assertion, the language "c/o Lovejoy Inc. Accounts Payable Dept" does not show or imply that Lovejoy agreed to be bound by the terms of the alleged contract. The designation "c/o" or "care of" simply means that one party accepts or receives something for another party. As an Ohio appellate court has explained, "the symbol 'c/o'

4

. . . [is] not ambiguous . . . [and] means 'in care of' and means that another only has 'custody' or 'temporary charge' over an item belonging to another." *Geraldo v. First Dominion Mut. Life Ins. Co.*, No. L-01-1210, 2002 WL 31002770, at *6 (Ohio Ct. App. Sept. 6, 2002) (citing *Buckeye Foods v. Cuyahoga Cnty. Bd. of Revision*, 78 Ohio St. 3d 459, 462, 678 N.E.2d 917, 919 (1997) (per curiam)); *see also C & R Forestry, Inc. v. Consol. Human Res., AZ, Inc.*, No. CV 05-381-N-EJL, 2008 WL 4000161, at *10 (D. Idaho Aug. 28, 2008) (noting that c/o or "care of" "signifies an intermediary who is responsible for transferring a piece of mail between the postal system and the final addressee"). Thus, the designation c/o simply meant that Lovejoy would accept Keystone's invoices on behalf of Accuro, not that it would be responsible for paying Keystone's invoices. Keystone's own internal records, attached to the Amended Complaint, are consistent with this conclusion. Keystone's invoices state that Accuro was the party to be billed, and its customer account records show Accuro, not Lovejoy, as the account debtor.

Keystone contends that the instant case is similar to *Ross Controls v. CVG International America, Inc.*, No. 98-CV-60329-AA, 1999 U.S. Dist. LEXIS 296 (E.D. Mich. Jan. 7, 1999), in which the court denied the defendant's motion to dismiss the plaintiff's breach of contract and account stated claims. Keystone's reliance upon the rationale of *Ross Controls*, which does not constitute binding precedent, is misplaced. In *Ross Controls*, the defendant submitted an initial purchase order and subsequently attempted to modify the contract unilaterally by submitting a revised purchase order after the plaintiff began production of the ordered goods. The defendant argued that the plaintiff's claims were subject to dismissal because a provision of the purchase order notified the seller that the purchase order was issued on behalf of a foreign corporation. *See id.* at *14. The issue was thus whether the defendant could be liable on the claims as the agent of a

5

disclosed principal. *Ross Controls* is distinguishable because the defendant submitted the purchase orders and therefore would have been bound unless the plaintiff had knowledge that the defendant was acting for a disclosed principal. In contrast, in the instant case, Accuro signed the Purchase Orders and there is no disclosed principal issue created by the Purchase Orders. Rather, Keystone contends that Lovejoy is bound based solely upon the "c/o" language in the Purchase Orders. As the Court has already found, such language does not suffice to bind Lovejoy to the Purchase Orders.

**B.     Account Stated**

A claim of account stated arises from a "balance struck between the parties on a settlement; and where a plaintiff is able to show that the mutual dealings which have occurred between the parties have been adjusted, settled, and a balance struck, the law implies a promise to pay that balance." *Thomasma v. Carpenter*, 175 Mich. 428, 437, 141 N.W. 559, 561 (1913). To show that charges or fees have become an account stated, a creditor must prove that the debtor either expressly accepted the charges by paying them or failed to object to them within a reasonable time. *See Keywell & Rosenfeld v. Bithell*, 254 Mich. App. 300, 331, 657 N.W.2d 759, 777 (2002) (per curiam).

Keystone's account stated claim fails against Lovejoy for essentially the same reasons as its breach of contract claim. Keystone alleges that it produced the medical products for Accuro and Lovejoy and that Defendants agreed to pay for the goods. Keystone further alleges that Lovejoy's accounts payable department was responsible for remitting payment to Keystone for the medical products. As noted above, however, the Purchase Orders, as well as Keystone's invoices and internal documents, show that Accuro ordered the goods and was responsible for payment, and Lovejoy's only involvement in the transactions was accepting Keystone's invoices on behalf of Accuro. Therefore, this claim will be dismissed.

6

C.      **Piercing the Corporate Veil**

In its final claim against Lovejoy, Keystone requests that the Court pierce Lovejoy's corporate veil with regard to Keystone's claims against Accuro.[4] Piercing the corporate veil is not an independent cause of action, but instead is an equitable theory or remedy that permits a court to disregard the corporate entity in certain circumstances for purposes of imposing liability on an underlying cause of action. *Kostopoulos v. Crimmins*, No. 299478, 2011 WL 6848354, at *3 (Mich. Ct. App. Dec. 29, 2011). Although pled as a separate claim, the Court construes Keystone's piercing claim as a request for equitable relief based on Keystone's underlying breach of contract claim against Accuro. (Am. Compl. ¶ 27 (alleging that Keystone "has suffered an unjust loss or injury by the Defendant(s) breach of contract").)

A court will ignore a corporation's separate existence "only where an otherwise separate corporate existence has been used to subvert justice or cause a result that [is] contrary to some other clearly overriding public policy." *Seasword v. Hilti, Inc.*, 449 Mich. 542, 548, 537 N.W.2d 221, 224 (1995) (internal quotation marks omitted) (alteration in original); *see also United States v. Bestfoods*, 524 U.S. 51, 63, 118 S. Ct. 1876, 1885 (1998) (noting that "the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably, fraud, on the shareholder's behalf."). "The traditional basis for piercing the corporate veil has been to protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate structure in an attempt to avoid legal obligations." *Foodland Dists. v. Al-Naimi*, 220 Mich. App. 453, 493, 559 N.W.2d 379, 396 (1996); *see also*

---

[4]A default and a default judgment were entered against Accuro by the Clerk on May 8, 2013. (Dkt. # 35.)

*Solomon v. Western Hills Dev. Co.*, 110 Mich. App. 257, 263, 312 N.W.2d 428, 431 (1981) (per curiam) ("Where the corporation is a mere agent or instrumentality of its shareholders or a device to avoid legal obligations, the corporate entity may be ignored."). A court may pierce the corporate veil where: (1) the corporate entity is a mere instrumentality of another individual or entity; (2) the corporate entity was used to commit a wrong or fraud; and (3) the plaintiff suffers an unjust injury or loss. *Florence Cement Co. v. Vettraino*, 292 Mich. App. 461, 469, 807 N.W.2d 917, 922 (2011) (per curiam).

Keystone fails to allege a sufficient factual or legal basis to support the remedy of piercing Accuro's corporate veil to impose liability on Lovejoy. First, Keystone requests that the Court pierce Accuro's corporate veil on the ground that Accuro is a mere alter ego of Lovejoy, but ignoring Accuro's separate existence would not allow for imposition of liability on Lovejoy.[5] Keystone does not allege that Accuro is a subsidiary of Lovejoy. *See Bogater v. Hometown Commc'ns Network, Inc.*, No. 241476, 2003 WL 22849804, at *1 (Mich. Ct. App. Dec. 2, 2003) (noting that "Michigan courts have generally required that a subsidiary must become a mere instrumentality of the parent before its separate corporate existence will be disregarded") (internal quotation marks omitted). Rather, Keystone alleges that Michael W. Hennessey and Hennessy family members or their trusts own Accuro. The remedy of piercing Accuro's corporate veil may or may not allow liability to be imposed against the Hennesseys—who own Accuro but are not defendants in this case—but it provides no basis for imposing liability against Lovejoy. Thus, as a matter of law, Accuro cannot be an instrumentality of Lovejoy. Next, Keystone alleges that Accuro's corporate form was used to commit a wrong "by separating the operational assets of the

---

[5]The rules of piercing the veil of corporations also apply to piercing the veil of a limited liability company. *See Florence Cement Co.*, 292 Mich. App. at 469, 807 N.W.2d at 922.

8

Accuro/Lovejoy line of business from Accuro's liabilities to the detriment of the Plaintiff and similarly situated creditors." (Am. Compl. ¶ 26.) This conclusory allegation not only fails to show that Lovejoy misused Accuro's corporate form to commit an injustice as to Keystone, *see Solomon*, 110 Mich. App. at 264, 312 N.W.2d at 432 (stating that "the injustice sought to be prevented must in some manner relate to a misuse of the corporate form short of fraud or illegality"), but is also contradicted by Keystone's allegation in the following paragraph that Accuro sold substantially all of its assets for approximately $150,000 pursuant to an assignment for the benefit of creditors. (*Id.* ¶ 27.) Accordingly, Keystone fails to allege a valid basis for imposing liability on Lovejoy through the remedy of piercing Accuro's corporate veil.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Lovejoy's Motion To Dismiss Keystone's claims.

An Order consistent with this Opinion will enter.


Dated: May 28, 2013                             /s/ Gordon J. Quist
                                         GORDON J. QUIST
                                      UNITED STATES DISTRICT JUDGE